UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER JOSE ROMERO-MEDINA,<br><br>                                   Petitioner,<br><br>v.<br><br>CHRISTOPER LAROSE, Warden, Otay Mesa Detention Center; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director, U.S. Immigrations and Customs Enforcement; TODD BLANCHE, Acting Attorney General of the United States, U.S. Department of Justice,<br><br>                                   Respondents. | Case No.:  26-cv-4111-GPC-JAC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

On July 17, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1. For the reasons outlined below, the Court GRANTS the petition and ORDERS Petitioner's immediate release.

//

//

1

26-cv-4111-GPC-JAC

## BACKGROUND

Petitioner Alexander Jose Romero-Medina is a native of Venezuela who entered the United States without inspection on or around June 25, 2021. ECF No. 1, ¶¶ 2, 4. Shortly thereafter, Petitioner was apprehended by immigration authorities who, on August 18, 2021, released Petitioner from custody on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.* ¶ 4; ECF No. 1-2, at 2.

On April 27, 2026, DHS issued Petitioner a Notice to Appear ("NTA") commencing removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). ECF No. 1, ¶ 28. The NTA scheduled Petitioner's initial Master Calendar Hearing for June 23, 2026. *Id.*

Petitioner appeared for his initial Master Calendar Hearing as directed and without incident. *Id.* ¶ 29. However, at a routine reporting appointment in Miami, Florida, on July 6, 2026, ICE officers arrested Petitioner and took him into immigration custody. *Id.* ¶ 30. Petitioner has since been transferred to the Otay Mesa Detention Center. *Id.* ¶ 31.

Petitioner filed this petition seeking immediate release. ECF No. 1. Respondents have filed a return to the petition, ECF No. 4, and Petitioner has filed a traverse, ECF No. 5.

## DISCUSSION

In their return to the petition, Respondents state that the legal issue presented by the petition concerns whether Petitioner's detention is governed by 8 U.S.C. §§ 1225(b)(2)(A) or 1226(a). ECF No. 4, at 2. Respondents mischaracterize the petition entirely. Petitioner does not challenge the statute governing his detention. Instead, Petitioner challenges the legality and constitutionality of his re-detention without any meaningful pre-deprivation procedure or opportunity to respond.

To the extent that Respondents do not engage with the due process arguments contained in the petition and do not oppose the Petition, the Court interprets this silence as a concession. *See, e.g., Mikhailovskii v. Semaia et al.*, No. 5:26-CV-0960-DSR, 2026 WL 1196232, at *2 (C.D. Cal. Apr. 27, 2026) ("Respondents affirmatively stated in their

26-cv-4111-GPC-JAC

Answer that they do not oppose the Petition, including Petitioner's due process claim.... Consistent with precedent, courts in this Circuit have regarded such silence as a concession."). Nonetheless, the Court addresses the constitutionality of Petitioner's detention.

Petitioner argues that his re-detention without any explanation, change in circumstances, or opportunity to be heard violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. ECF No. 1, ¶¶ 52-63. Respondents respond only that Petitioner's parole was terminated by the issuance of a Notice to Appear on April 27, 2026. ECF No. 4, at 2. The Court agrees with Petitioner.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner's, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community."

26-cv-4111-GPC-JAC

*Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

When Petitioner was previously released from government custody, he "took with him a liberty interest which is entitled to the full protections of due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty"). Additionally, such an interest does not expire with Petitioner's parole agreement. *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

Having determined that Petitioner maintains a protected liberty interest in remaining out of custody, the Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481.

"The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

4

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Indeed, Petitioner's five years out of government custody "have only heightened [his] liberty interest in remaining out of detention." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, Petitioner has not received any bond or custody hearing upon his re-detention, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner on parole in 2021, immigration officials determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have provided no evidence that these circumstances have changed.

Instead, Respondents state only that Petitioner's parole was terminated by the issuance of an NTA on April 27, 2026. However, the April NTA was insufficient to justify Petitioner's re-detention. First, the NTA erroneously states that Petitioner had not previously been paroled by an immigration officer. *See* ECF No. 1-3, at 2. An NTA cannot terminate parole "that it does not acknowledge exists." *Mendez-Gordillo v. Blanche*, No. 2:26-CV-00579-APG-MDC, 2026 WL 1706914, at *3 (D. Nev. June 11, 2026). Second, the NTA provided no individualized determination as to the termination of Petitioner's parole as required by federal regulations. *See Morales v. Blanche*, No. 2:26-CV-01398-

26-cv-4111-GPC-JAC

ART-MDC, 2026 WL 2098165, at *3 (D. Nev. July 20, 2026) (citing 8 C.F.R. § 212.5(e)(2)(i)). Finally, even if Petitioner's parole was subject to "termination or expiration," that fact does not "somehow obviate the need for the government to provide a[n] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Rather, "[o]nce established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.*

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). In sum, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner without explanation, notice, or an opportunity to be heard despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing [was] warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the burden would have been on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention was necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15; *Ortiz Donis*, 2025 WL 2879514, at *15 ("Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

26-cv-4111-GPC-JAC

In light of such a violation, Petitioner's release from custody is the appropriate remedy. *See, e.g., Perez v. Casey*, No. 26-CV-0655-JES-BLM, 2026 WL 370397, at *2 (S.D. Cal. Feb. 10, 2026); *Quiroz v. Larose*, No. 26-CV-866 JLS (DEB), 2026 WL 673822, at *3 (S.D. Cal. Mar. 10, 2026); *Aliyev v. LaRose*, No. 3:26-CV-01119-CAB-JLB, 2026 WL 699818, at *3 (S.D. Cal. Mar. 12, 2026); *Devilmar v. LaRose*, No. 3:26-CV-01748-JES-MSB, 2026 WL 1042439, at *2 (S.D. Cal. Apr. 17, 2026); *Perez v. Noem*, No. 3:25-cv-3777-CAP-JBL, 2026 WL 102643, at *2 (S.D. Cal. Jan. 14, 2026).[1]

**CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

- The Court GRANTS the petition for writ of habeas corpus, ECF No. 1.[2]
- The Court ORDERS Respondents to release Petitioner from custody IMMEDIATLEY and return him to his conditions of parole that existed at the time of his July 6, 2026, detention.
- Respondents SHALL NOT re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.
- The Clerk of Court shall close the case.

IT IS SO ORDERED.

---

[1] Having reached this conclusion on the grounds that Respondents' re-detention of Petitioner without notice or a hearing constituted a due process violation, the Court declines to reach the merits of Petitioner's Administrative Procedure Act claim.

[2] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act. ECF No. 1, at 14. That request is DENIED without prejudice. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.

26-cv-4111-GPC-JAC

Dated:  July 24, 2026

Hon. Gonzalo P. Curiel
United States District Judge

26-cv-4111-GPC-JAC